# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CHRISTOPHER BAKER**, | : | CIVIL ACTION NO. 1:08-CV-1741 |
| **Plaintiff** | : | |
| | : | (Judge Conner) |
| v. | : | |
| | : | |
| **SOUTHERN YORK COUNTY SCHOOL DISTRICT**, | : | |
| | : | |
| **Defendant** | : | |

## **MEMORANDUM**

Presently before the court is defendant Southern York County School District's ("the District") motion (Doc. 58) for summary judgment against plaintiff Christopher Baker ("Christopher"). The District moves for summary judgment on all remaining counts in Christopher's complaint (Doc. 1). The District asserts that Christopher cannot establish the requisite level of discriminatory intent to support Christopher's claims for violations of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq*, and § 504 of the Rehabilitation Act, 29 U.S.C. § 794 *et seq*. For the reasons that follow, the court will grant the motion.

**I. Factual Background**[1]

Christopher is a former student of Susquehannock High School, which is governed by the District. Christopher has learning disabilities and received special education services while in school. As part of those services, the District created and implemented an "individualized education program" ("IEP") for the sake of providing Christopher with remedial instruction, accommodations, and appropriate modifications of regular educational programming. The District formed an "IEP team" to formulate and apply the IEP that included, among others, Christopher, his mother Paula Gryp ("Ms. Gryp"), Christopher's teachers, the school psychologist, and the school guidance counselor. (See Doc. 59-6, at 48).

In the summer before Christopher's senior year, the IEP team convened to discuss Christopher's senior-year class schedule, including the extent of his participation in regular education classes. (Doc. 59 ¶ 19). Christopher's attorney also participated in this discussion. (Id. ¶ 11; Doc. 59-4, Ex. C, at 74). During this meeting, the IEP team developed at least twenty-one items of adaptation or

---

[1] In accordance with the standard of review for a motion for summary judgment, the court will present the facts in the light most favorable to Christopher, the nonmoving party. See *infra* Part III. Christopher does not dispute the District's Local Rule 56.1 statement of material facts and the same are deemed admitted. See Doc. 67, at 1 ("Plaintiff does not dispute the contents of these citations . . . ."). In Christopher's "Statement of Material Facts in Dispute" (Doc. 67), Christopher makes a number of factual allegations regarding the adequacy of the IEP's accommodations and modifications, as well as other aspects of Christopher's education. The court has thoroughly examined these allegations and, as discussed *infra*, finds that there is no evidence of intentional discrimination on behalf of the District.

2

modification for Christopher's classes. (Doc. 59 ¶ 16). For example, the IEP team deemed it an appropriate accommodation to provide Christopher with answers to certain test questions as part of exam preparation. (Doc. 59-1, Ex. A, at 43, 79-81). The IEP also exempted Christopher from meeting the Social Studies credit requirement for high school graduation. (Doc. 59 ¶ 17). In addition, the IEP team placed Christopher in the District's Diversified Occupations program – a work release program – as a component of his regular education curriculum. (Id. ¶ 18).[2]

During Christopher's senior year, the District compiled and reported to Christopher and Ms. Gryp information concerning Christopher's reading, written language, and math levels obtained from private evaluators, a District-employed psychologist, an Intermediate Unit-employed psychologist, and teachers. (Id. ¶ 13). This information included norm-referenced standard scores, curriculum-based assessments, IEP goal criterion-referenced progress monitoring, and regular education class progress monitoring. (Id.) Ms. Gryp met with district personnel on a weekly or bi-weekly basis to discuss the implementation of Christopher's IEP. (Id. ¶ 10). During the school year, Ms. Gryp and Christopher also discussed with the District whether Christopher should graduate or remain in high school for another year. (Doc. 67-5, Ex. G, at 9; Doc. 59-1, Ex. A, at 34-35; Doc. 59-3, Ex. B, at 26-27).

---

[2] Christopher's attorney specifically requested that the IEP team consider Christopher for placement in the Diversified Occupations program. (Id. ¶ 11, 18).

Midway through Christopher's senior year, the IEP team reconvened and revised his IEP. (Id. ¶ 12). As part of this revision, the IEP team utilized the results of an independent educational evaluation of Christopher's abilities as well as curriculum-based assessments administered by the District to modify and improve the IEP. (Id.)

At the end of the school year, the District believed that Christopher was successfully prepared for life beyond school and considered his academic performance sufficient to justify graduation. (Doc. 59-5, Ex. C, Vol. II, at 187). Christopher graduated from high school in June, 2007.[3]

## II. **Procedural History**

Christopher filed suit on September 19, 2008, alleging violations of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq*, Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, and Section 504 of the Rehabilitation Act of 1973 ("§ 504"), 29 U.S.C. § 794 *et seq*. (Doc. 1). On November 21, 2008, the District filed a motion (Doc. 10) to dismiss. On December 8, 2009, the court dismissed Christopher's IDEA claim because Christopher had not exhausted administrative remedies. (Doc. 31). The court denied the motion with

---

[3] There is a factual dispute regarding the correct assessment of Christopher's reading comprehension level at graduation. Christopher's graduation summary stated that his reading comprehension was on a 12th grade level. (See Doc. 59-1, Ex. A, at 61-64). However, Christopher believed that at the end of his senior year, he was reading only at a 9th grade level. (Id. at 48, 61-70; Doc. 59-3, Ex. B, at 39). This factual dispute does not preclude summary disposition for the reasons set forth *infra* in Section IV of this Memorandum.

4

respect to Christopher's ADA and § 504 claims, but limited the scope of the claims to events occurring on or after September 19, 2006, two years before the filing of the complaint. (Id.) Thus, Christopher's claims are now effectively limited to events occurring during his senior year of high school.

On January 30, 2012, the District filed the instant motion for summary judgment, alleging that Christopher's § 504 and ADA claims for compensatory damages cannot survive without evidence of intentional discrimination and that the record does not support a finding of intentional discrimination.[4] The matter is fully briefed and ripe for disposition.

## III. Legal Standard

Through summary adjudication the court may dispose of those claims that do not present a "genuine dispute as to any material fact" and for which a jury trial

---

[4] In the alternative, the District makes two arguments: (1) that § 504 and the ADA do not contemplate any recovery based on inadequate post secondary transition planning; and (2) that Christopher does not have sufficient evidence of discrimination based on factual assertions of disability-based peer-on-peer harassment. (See Doc. 62, at 21-25). Christopher does not respond directly to these arguments, (see Doc. 68), but he mentions inadequate post secondary transition planning in his argument regarding intentional discrimination. In light of the court's conclusion that the District did not act with deliberate indifference towards Christopher, it need not address the District's alternative argument on this ground. As to the peer-on-peer harassment claim, the court notes that Christopher does not provide any factual assertions in support of this claim and, therefore, the court finds that he has abandoned this claim. See Ankele v. Hambrick, 286 F. Supp. 2d 485, 496 (E.D. Pa. 2003) (quoting Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 599 (11th Cir. 1995) ("[T]he onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned.")).

would be an empty and unnecessary formality.  See FED. R. CIV. P. 56(a).  The burden of proof is upon the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief.  Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986).  Only if this threshold is met may the cause of action proceed.  Pappas, 331 F. Supp. 2d at 315.

**IV. Discussion**

Christopher's remaining claims seek compensatory damages under § 504 of the Rehabilitation Act[5] and the ADA.[6] The prima facie cases for compensatory claims brought pursuant to § 504 and ADA are identical.[7] Chambers *ex rel.* Chambers v. Sch. Dist. Of Phila. Bd. Of Educ., 587 F.3d 176, 189 (3d Cir. 2009).

---

[5] Section 504 of the Rehabilitation Act provides that:

> No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794.

[6] The ADA provides, in relevant part:

> Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132.

[7] As noted in the court's disposition (Doc. 31) of the District's motion to dismiss, the parties do not dispute the fact that claims under § 504 and the ADA are subject to the same analysis. Thus, the court intends any reference to § 504 also to encompass Christopher's ADA claim. (See Doc. 31, at 4; Doc. 68, at 8 n.1).

Christopher must provide sufficient evidence for a jury to reasonably conclude that he "(1) has a disability; (2) was otherwise qualified to participate in a school program; and (3) was denied the benefits of the program or was otherwise subject to discrimination because of [his] disability."[8] Id. The parties dispute only the third element, *i.e.*, whether the District discriminated against Christopher due to his disability. Specifically, the parties dispute whether the third element requires proof of intentional discrimination and, if so, the level of intent required. (See Doc. 62; Doc. 68, at 12).

The Third Circuit has not addressed whether proof of intentional discrimination is a prerequisite to the recovery of compensatory damages under § 504. But see Sher v. Upper Moreland Twp. Sch. Dist., Civ. A. No. 11-3526, 2012 WL 1528366 (3d Cir. May 2, 2012) (quoting Meagley v. City of Little Rock, 639 F.3d 384, 389 (8th Cir. 2011) ("All circuits to decide the question have held that to recover compensatory damages under either the ADA or the Rehabilitation Act, a plaintiff must establish that the agency's discrimination was intentional.")). The majority of circuit and district courts which have addressed this issue require some showing of intent. See Chambers *ex rel.* Chambers v. Sch. Dist. Of Phila. Bd. of Educ., 827 F. Supp. 2d 409, 422-24 (E.D. Pa. 2011) (listing cases); see also Adam C. v. Scranton Sch. Dist., Civ. A. No. 07-532, 2011 WL 996171, at *16 n.7 (M.D. Pa. Mar. 17, 2011)

---

[8] For a claim under § 504, Christopher must also establish that the District receives federal funding. 29 U.S.C. § 794(a). The parties do not dispute this element.

8

*reconsideration denied by* 2011 WL 4072756 (M.D. Pa. Sept. 13, 2011); David G. v. Council Rock Sch. Dist., Civ. A. No. 06-1523, 2012 WL 1231812 (E.D. Pa. April 12, 2012); A.G. v. Lower Merion Sch. Dist., Civ. A. No. 11-5025, 2011 WL 6412144 (E.D. Pa. Dec. 20, 2011); Kaitlin C. v. Cheltenham Twp. Sch. Dist., Civ. A. No. 07-2930, 2010 WL 786530 (E.D. Pa. Mar. 5, 2010).

Christopher cites the Third Circuit's decision in Ridgewood Bd. of Educ. v. N.E., 172 F.3d 238, 253 (3d Cir. 1999) for the proposition that "a plaintiff need not prove that defendants' discrimination was intentional" in order to state a § 504 claim.[9] See also Nathanson v. Med. Coll. Of Pa., 926 F.2d 1368, 1384 (3d Cir. 1991); NAACP v. Med. Ctr., Inc., 657 F.2d 1322, 1331 (3d Cir. 1981). We agree with our sister court's reasoning in Kaitlin C. that "[t]here is no indication that the court's statement in Ridgewood was intended to apply to § 504 claims seeking compensatory damages." 2010 WL 786530, at *4. The Kaitlin C. court conducted an in-depth analysis of the Rehabilitation Act's remedies provision as well as Supreme Court precedent to support its conclusion that compensatory damages under § 504 require a showing of intentional discrimination. 2010 WL 786530, at *4-6; see also David G., 2012 WL 1231812 at *3. We adopt this analysis *in toto*. See also Adam C.,

---

[9] Christopher also cites Vicky M. V. Northeastern Educ. Intermediate Unit, 689 F. Supp. 2d 721, 737 (M.D. Pa. 2009). However, the Vicky M. Court merely held that compensatory damages are recoverable under § 504 even though they are not recoverable under the IDEA. Id. at 737-738. The court never addressed the question of whether intentional discrimination is required for the recovery of compensatory damages.

9

2011 WL 996171, at *16 n.7.[10]  Christopher must present sufficient evidence of intentional discrimination to survive summary judgment on his compensatory damages claim.

The Third Circuit has not articulated the level of intent necessary for a showing of intentional discrimination.  Several circuit courts have adopted a "deliberate indifference" standard.  See, e.g., Meagley v. City of Little Rock, 639 F.3d 384, 389 (8th Cir. 2011); Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 275 (2d Cir. 2009); Duvall v. County of Kitsap, 260 F.3d 1124, 1138-39 (9th Cir. 2001); Powers v. MJB Acquisition Corp., 184 F.3d 1147, 1153 (10th Cir. 1999).  Other circuits require a more stringent showing of "bad faith or gross misjudgment."  See, e.g., Sellers v. Sch. Bd., 141 F.3d 524, 529 (4th Cir. 1998).  In Adam C., Judge Caputo applied the "deliberate indifference" standard.  2011 WL 996171, at *16 n.7 ("The officials' response must amount to deliberate indifference to discrimination.").  The court need not discern which standard to apply because it is clear that Christopher is unable to adduce sufficient record evidence to support a finding of intent under the less stringent "deliberate indifference" standard.

---

[10] The Adam C. court focuses on the Supreme Court's holding in Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274 (1998), which requires a showing of intentional discrimination for compensatory damages under Title IX.  2011 WL 996171, at *16 n.7.  The Adam C. court notes that "[w]hile Gebser was a Title IX case, Title IX was modeled after Title VI, and the remedies available under the ADA and [the Rehabilitation Act] are those available under Title VI."  Id.

Under the deliberate indifference standard, intentional discrimination may be "inferred from a defendant's deliberate indifference to the strong likelihood that pursuit of its questioned policies will likely result in a violation of federally protected rights." Powers v. MJB Acquisition Corp., 184 F.3d 1147, 1153 (10th Cir. 1999). Deliberate indifference requires the District to (1) possess "knowledge that a harm to a federally protected right is substantially likely" and (2) fail to act upon that knowledge. Duvall v. County of Kitsap, 260 F.3d 1124, 1139 (9th Cir. 2001). The Ninth Circuit explained in Duvall that a public entity has "knowledge" once the plaintiff alerts the entity to his need for accommodation. Id. Failure to act requires conduct that is "more than negligent, and involves an element of deliberateness." Id.

Chambers *ex rel.* Chambers v. Sch. Dist. Of Phila. Bd. of Educ., 827 F. Supp. 2d 409, 422-24 (E.D. Pa. 2011) is factually similar to the case *sub judice*. In Chambers, plaintiffs alleged that the defendant school district intentionally denied their autistic and developmentally disabled daughter, Ferren, a free and appropriate public education ("FAPE"). 827 F. Supp. at 411-12. Plaintiffs emphasized their daughter's lack of developmental progress, the school district's failure to incorporate "clinical assessments" into their daughter's IEP, and the school district's failure to implement services required in Ferren's IEP. Id. at 426-29. The court granted the school district's motion for summary judgment on plaintiffs' § 504 and ADA claims, opining that:

> weighty evidence demonstrates that the School District
> made numerous attempts to provide Ferren with a FAPE
> over her sixteen-plus years in the district, and repeatedly
> revised her IEPs to achieve this result. A finding of
> deliberate indifference is inappropriate on these grounds
> solely because those efforts sadly proved fruitless or did
> not achieve understandable parental hopes.

Id. at 426. The Chambers court also dismissed evidence regarding the school district's failure to implement required IEP services, because the evidence "does not establish any facts relating to the state of mind of the School District officials charged with carrying out [the IEPs] . . . ." Id. at 428. The court reasoned that "[t]his evidence certainly would create an issue of material fact with respect to whether the School District denied Ferren a FAPE" but that a jury could not find that the school district acted with deliberate indifference. Id.

Christopher asserts that the District acted with deliberate indifference towards him because of his disability in three ways: (1) failing to provide Christopher with a FAPE by improperly implementing an inadequate IEP; (2) enrolling Christopher in a work-study program, Diversified Occupations, which failed to provide job or career-related training; and (3) misrepresenting Christopher's reading comprehension level upon graduation. (Doc. 68, at 18-19). The record evidence does not present sufficient evidence for a reasonable jury to conclude that the District acted with deliberate indifference toward Christopher because of his disability on any of these grounds. As in Chambers, none of these

assertions sufficiently implicates the state of mind of school officials responsible for implementing Christopher's IEP.

Christopher argues that the District acted with deliberate indifference because it generally failed to provide Christopher with academic instruction and failed to "remediate substantial gaps" in his education. (Id.) For example, Christopher claims that the District provided him with answers to test questions as part of exam preparation, which artificially inflated his grades and curriculum-based assessments. (Id.) Additionally, Christopher asserts that the District improperly waived credit requirements for graduation. (Id.)

Christopher's lack of educational progress is not probative of the District's deliberate indifference. Even if the District failed in its "remediation" efforts, mere negligence on the part of school officials is insufficient to establish liability for compensatory damages. Moreover, there is no evidence of intentional disregard of Christopher's academic needs. To the contrary, it is undisputed that Christopher received answers to certain test questions in exam preparation and a waiver of several credit requirements for graduation *as part of the accommodations and modifications provided to him in his IEP*. (See Doc. 67 ¶¶ 27, 32, 81; Doc. 59-1, Ex. A, at 79-81, 93; Doc. 59-2, Ex. A, Vol. II, at 110-153; Doc. 59-4, Ex. C, at 54). The IEP included these accommodations and modifications because the IEP team, which included Christopher and his mother, had legitimate, pedagogical reasons for these acts, and there is no record evidence suggesting otherwise. To suggest that these

accommodations caused deficiencies in academic achievement ignores the assiduous efforts undergirding the development of Christopher's IEP. A jury cannot reasonably conclude that the District acted with deliberate indifference merely because the District provided Christopher with such modifications based on his disability. It bears reiteration that § 504 explicitly requires the District to design individual educational programming for disabled students by providing accommodations and modifications to regular curriculum requirements. See 34 C.F.R. § 104.33(a) and (b) (implementing regulations for § 504 which defines "appropriate education" for disabled students as "regular or special education and related aids and services . . . designed to meet the needs of handicapped persons," including services implemented through an IEP); 34 C.F.R. § 104.35(c) (implementing regulation for § 504 which requires multi-disciplinary team evaluations of a disabled student's needs to determine educational placements).

Instead of deliberate indifference, the record demonstrates that the District carefully and diligently engaged in the process of developing and implementing an IEP for Christopher. His IEP team met in July 2006 prior to Christopher's senior year to plan his IEP. During the school year, the District met with Ms. Gryp at least every other week, if not weekly, to discuss the implementation of the IEP. The team met again in January 2007 to revise his IEP by incorporating the findings of Dr. Antell's independent educational evaluation. It is uncontroverted that the District repeatedly provided Ms. Gryp and Christopher with information regarding

14

Christopher's progress and that Ms. Gryp and Christopher continuously participated in the development of his educational curriculum. That the IEP was inadequate, or that Ms. Gryp and Christopher were dissatisfied with Christopher's academic progress is insufficient for a jury to find that the District acted with deliberate indifference.

Similarly, a jury could not find deliberate indifference merely because Christopher enrolled in a work release program. Indeed, the record is devoid of evidence that Christopher's experience in the program differed from that of any other general education student who enrolled in the program. Christopher and Ms Gryp's ultimate disappointment with the results and quality of the program does not shed any light on the District's state of mind in allowing Christopher to enroll. There is simply no evidence for a jury to conclude that the District acted with deliberate indifference towards Christopher based on his disability by allowing him to participate in a work release program.

Lastly, Christopher provides no support for the allegation that the District fabricated curriculum-based measurements to reflect that Christopher could read at a 12th grade level. The record evidence reflects only moderate inconsistencies in Christopher's test results. (See Doc. 59-6, Ex. C, Vol. III; Doc. 67-1, Ex. C; Doc. 67-2, Ex. D). Although the District assessment upon Christopher's graduation does not correspond with Christopher's self-assessment, see Doc. 59-1, Ex. A, at 48, 61-70 (discussing his belief that he was only reading at the 9th grade level), there is no

15

evidence that the District disregarded any tests or assessments measuring Christopher's reading level. To the contrary, the record clearly shows that the District carefully considered all assessments in the development and administration of Christopher's IEP, including his amended IEP. (See, e.g., Doc. 59-2, Ex. A, Vol. II, at 110-153; Doc. 59-4, Doc. 59-5, Doc. 59-6, Ex. P-2, P-3, P-4, P-5, P-6, P-11, P-47, P-49, P-54, P-56, P-64, P-65, P-67, P-68, P-69)). As a matter of law, Christopher does not present any evidence upon which a reasonable jury could find that the District acted with bad faith, gross misjudgment, or deliberate indifference.

The court is not unsympathetic to parents, like Ms. Gryp, who are dismayed when hoped-for academic results fall short of expectations. The court also acknowledges and commends the active participation of Ms. Gryp and Christopher in the District's efforts to establish for Christopher an appropriate educational program. However, the record in the instant case is devoid of evidence of deliberate indifference on the part of the District, and therefore, Christopher is not eligible for compensatory relief of any kind.

## V. Conclusion

For the foregoing reasons, the court will grant the District's motion for summary judgment. An appropriate order follows.

    S/ Christopher C. Conner
    CHRISTOPHER C. CONNER
    United States District Judge

Dated:     December 17, 2012

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CHRISTOPHER BAKER**, | : | **CIVIL ACTION NO. 1:08-CV-1741** |
| **Plaintiff** | : | |
| | : | **(Judge Conner)** |
| v. | : | |
| **SOUTHERN YORK COUNTY SCHOOL DISTRICT**, | : | |
| **Defendant** | : | |

# **O R D E R**

AND NOW, this 17th day of December, 2012, upon consideration of defendant's motion (Doc. 58) for summary judgment, it is hereby ORDERED that:

1. Defendant's motion (Doc. 58) for summary judgment is GRANTED.

2. The Clerk of the Court is directed to CLOSE this case.

          S/ Christopher C. Conner
          CHRISTOPHER C. CONNER
          United States District Judge